**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – LOUISVILLE**
**CIVIL ACTION NO.** 3:15-cv-821-TBR

GEORGE A. GRAYIEL

PLAINTIFF

v.                                    **COMPLAINT**

AIO HOLDINGS, LLC,
AND
 SAMIR ANASTAS
AND
GREGORY ANASTAS
AND
SARINPRAPA TEEMA
AND
 BLUE LIGHT OF KENTUCKY LIMITED LIABILITY COMPANY
AND
 JOHN DOE ENTITIES AND PERSONS 1-100 TO BE NAMED.

DEFENDANTS

*** *** *** *** ***

GEORGE A. GRAYIEL ("**Grayiel**" or "**Plaintiff**"), hereby submit this complaint in respect of a continuing fraud originally perpetrated by the now-deceased convict Martin Twist, and since 2009, continued by Defendants AIO Holdings, LLC ("**AIO**") Samir Anastas, Gregory Anastas and Sarinprapa Teema (collectively, the "**Defendants**") and pleads as follows:

**INTRODUCTION**

1.      Grayiel is a retired mailman.  This case involves an elaborate fraudulent scheme perpetrated by a now-deceased convict, Martin Twist ("**Twist**"), which robbed Grayiel of his life savings and family inheritance.

2.      In or about 2000, Twist solicited investments from Grayiel in respect of what ultimately turned out to be a fraudulent and ponzi-like natural gas drilling scheme.  Twist,

utilizing a labyrinth of special purpose vehicles and holding companies (the "**Twist Companies**"), violated his agreements and promises, commingled investor and company funds, diverted such funds to his personal use, and failed to carry out the drilling objectives for which the investments (including Grayiel's investment) was made.

3.    By the late-2000s, Twist and the Twist Companies had come under substantial scrutiny and threat of litigation in respect of these fraudulent practices from both state securities regulators and investors.

4.    At or around that time, Twist and a group of entities and individuals, some of whom are Defendants in this action, planned and executed a fraudulent scheme to remove Twist's and the Twist Companies' assets from the reach of Twist's victims.

5.    While this scheme had many facets, ranging from shadowy Caribbean real estate transactions to Panamanian offshore trust vehicles – all of which will be the subject of discovery in this action – one of the principal bases of this litigation concerns a scheme and conspiracy to fraudulently transfer the Twist and the Twist Companies' natural gas assets to the ownership of AIO, and the benefit of Greg Anastas, Samir Anastas and Sarinprapa Teema.

6.    In particular, pursuant to a fraudulent and fictitious "credit facility agreement" and a purported "consent judgment" ("**Consent Judgment**"), the Twist Companies wrongfully assigned and transferred their natural gas assets ("**Natural Gas Assets**") to AIO.

7.    This fraud was conceived and executed by Twist, AIO, Greg Anastas and Samir Anastas for the express purpose of unlawfully shielding the Twist Companies' assets from Twist's victims -- the investors *cum* creditors.

2

8.     While nominal ownership of the Natural Gas Assets was transferred to AIO in 2009, all incidents of ownership, including total control and operation, and 100% of the revenues and profits were diverted to Twist shell entities until Twist's incarceration on or about 2012.

9.     At or around that time, Sarinprapa Teema, Martin Twist's most recent girlfriend and the mother of his youngest child, AIO, Greg Anastas and Samir Anastas conspired and executed a continuation of the fraud involving Twist and the Twist Companies . Specifically, Sarinprapa Teema took over operation and management of the Natural Gas Assets, and took 50% of the profits while remitting the remaining 50% to AIO, Greg Anastas and Samir Anastas collectively.

10.     Since Martin Twist's incarceration and subsequent death, Sarinprapa Teema has wrongfully converted and depleted more significant Twist Companies; assets in a continuing scheme, solely for her personal benefit, to defraud Twist investors such as Grayiel.

11.     Grayiel brought an action for investment fraud under West Virginia's security laws against Twist and a number of his co-conspirators and some of the known Twist Companies in 2010.

12.     As will become highly relevant in the context of the fraudulent Consent Judgment, in the face of numerous investors' litigation, Twist employed a scheme whereby he invoked the arbitration clauses in respect of each individual investment agreement (of which Grayiel entered many, for a total sum of $886,162), in attempt to make disputes uneconomical and difficult due to the expenses and delay of arbitration. The arbitration clauses were ultimately declared invalid by the West Virginia Supreme Court, which expressly noted an *amicus curiae* brief by the West Virginia Securities Commission detailing the wrongful nature of Twist's scheme.

3

13.     Grayiel ultimately obtained judgments on [insert date] in the amount of $2,562,188.95 against various Twist Companies and later, in 2014, the Estate of Martin Twist (collectively, the "**Grayiel Judgments**").

14.     Shortly after the Grayiel Judgments were obtained, Grayiel began to investigate the Twist and Twist Companies' assets and discovered that the Natural Gas Assets had been suspiciously transferred to AIO. Subsequent to this discovery, Grayiel began an investigation to uncover the nature of any transactions involving AIO, Twist, the Twist Companies with respect to the Natural Gas Assets.  He engaged in various discovery measures, and appeared in the probate proceeding in respect of Martin Twist in an attempt to obtain evidence and emails regarding the suspect transfer.

15.     In 2015, Sarinprapa Teema was removed as the executrix of the Martin Twist Estate (the "**Martin Twist Estate**"), while Grayiel waited and urged the court-appointed receiver to obtain Twist's business laptop and email correspondence.  The court-appointed receiver obtained this laptop under court order from Sarinprapa Teema and permitted the information on the laptop to be forensically analyzed and shared with Grayiel.  It was discovered that virtually all emails, aside from junk mail, had apparently been removed from this laptop, which had been in Sarinprapa Teema's exclusive possession since Twist's incarceration and death.

16.     Beginning in the summer of 2015, efforts were then made by the receiver, which continue at present, to obtain the complete set of emails directly from the Canadian email service company that provided Twist with his email address and domain name.  Unfortunately, this effort met with substantial resistance from the Canadian company, despite the fact that a court-Appointed receiver had been appointed over the Martin Twist Estate, and the email address and emails in question are unquestionably his.

17.     Grayiel lost nearly all his assets in the fraudulent Twist investment scheme.  He is a kind-hearted and generous person who has resolved not to give up.  Thankfully, he recently made a breakthrough.  He began engaging in a discourse with Lonny Armstrong ("**Armstrong**"), one of Twist's executives. These discussions between Grayiel and Armstrong, Armstrong confirmed the fraudulent nature of the Natural Gas Asset transfer to AIO.

18.     Grayiel then referred the matter to his financial forensic consultant, who asked Armstrong to research his files for supporting documentation concerning the fraud.  In response, Armstrong prepared an affidavit, dated October 18, 2015 ("**Armstrong Affidavit**").   The Armstrong Affidavit confirms numerous components of the conspiracy between and amongst Defendants to further the Twist fraud, and is attached hereto as Exhibit 1.

### JURISDICTION AND THE PARTIES

19.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

21.     Grayiel is a resident of Hurricane, Putnam County, West Virginia, United States. Grayiel was an investor in the Natural Gas Asset scheme operated by Twist, a scheme which concerned ventures to drill oil and gas wells in West Virginia. Twist defrauded Grayiel and Grayiel has obtained the Grayiel Judgments against the Martin Twist Estate and related entities. Attached hereto as Exhibit 2 is statement of claim filed by Grayiel in the Commonwealth of Kentucky, Jefferson County District Court, Probate Division, against the Martin Twist Estate; attached hereto as Exhibit 3 is the judgment in Grayiel's favor against all Defendants except

5

Martin Twist (the "**Grayiel Companies Judgment**"); and attached hereto as Exhibit 4 is the judgment in Grayiel's favor against the Martin Twist Estate (the "**Grayiel Estate Judgment**").

22.     AIO is a limited liability company believed to be organized under the laws of Delaware, with its principal place of business in Louisville, Kentucky. Attached hereto as Exhibit 5 is a copy of what are believed to be AIO's entity details from the West Virginia Secretary of State.

23.     Gregory Anastas is a resident of Louisville, Kentucky, and is believed to be the Managing Member and sole Member of an entity named Advantage Investments, LLC, which is the Managing Member and the sole Member of AIO.

24.     Samir Anastas is the father of Gregory Anastas and who was previously convicted of tax evasion and further, was reported to have engaged in a cigarette tax stamp scheme.  Upon information and belief, Samir Anastas was introduced to Martin Twist by a Virgin Islands real estate broker named Roger Minkoff.  Minkoff was the Managing Member of a Virgin Islands shell company utilized to hide real estate assets beneficially owned by Martin Twist.  Roger Minkoff has been granted a release in exchange for a transfer of the subject shares and his testimony.  Twist fraudulently transferred the other 50% of the shares to Sarinprapa Teema. Sarinprapa Teema has not admitted liability for this and the resultant settlement document was agreed not to be admissible in any other proceeding.

25.     Sarinprapa Teema was Martin Twist's girlfriend, the mother of his youngest child, and was formerly the executrix of the Martin Twist Estate.  Sarinprapa Teema was removed from the position of executrix.  Attached hereto as Exhibit 6 is the order removing her as executrix of the Martin Twist Estate.  Sarinprapa Teema is also, upon information and belief, the Manager of Blue Light of Kentucky Limited Liability Company .

    a.  After the fraudulent transfer of the Natural Gas Assets, 530 West Main Street, a Twist-owned company, purportedly acting on behalf of AIO, delegated and transferred operation, management and revenue collection in respect of the wells to Blue Light of Kentucky LLC.  A true and correct copy of this "Natural Gas Gathering Agreement" is attached hereto as Exhibit 7.

    b.  While Twist formerly owned and managed a similar sounding company called Blue Light of Kentucky LLC he then transferred the management, ownership and revenue collection responsibilities in respect of the Natural Gas Assets to a new, similar sounding entity, Blue Light of Kentucky Limited Liability Company, which is managed and controlled by Sarinprapa Teema. This was accomplished part of the continuing scheme to defraud creditors and shield assets, and specifically, the Natural Gas Assets.

    c.  From the time of Twist's incarceration and subsequent death, and up until her removal as executrix of the Martin Twist Estate, Sarinprapa Teema was in possession and control of substantial Twist assets and assets held by Twist-owned and controlled vehicles, including the Natural Gas Assets.  Attached hereto as Exhibit 8 are asset and liability sheets for just three Twist Companies.  They show significant and substantial "equity draws" by Sarinprapa Teema and "Martin Twist" in the time since his incarceration and subsequent death.

26.    Martin Twist is deceased.  His estate is a judgment debtor in respect of George Grayiel because he originally managed and owned the assets of numerous Twist Companies prior to fraudulently transferring such assets in furtherance of the conspiracy and scheme to defraud described in this Complaint.

27.    Twist was the subject of numerous federal and state investigations for fraud, and to that end, received cease and desist orders from multiple states' securities commissions. Attached hereto as Exhibit 9 are a sample of such cease and desist orders from the Alabama Securities Commission, the State of Illinois Secretary of State – Securities Department, and the West Virginia Securities Division, including Order No. 03-1291 dated July 29, 2003 from the West Virginia Securities Division against Appalachian Energy Partners 2001-D LLP, Cherokee Energy Company, LLC and Martin R. Twist.

28.    Twist operated and controlled numerous entities (the "**Twist Entities**")[1] whereby he engaged in a pattern and practice of creating shell companies to induce investment in specific alleged wells.  Then, after inducing investments, Twist merged funds into one or two shell corporations, and funds were then cashed out by Twist without any cognizable business purpose. Attached hereto as Exhibit 10 is a chart summarizing money transfers and cash withdrawals a submitted as part of an amicus brief filed by the West Virginia State Auditor and Commissioner of Securities in Grayiel's appeal to the Supreme Court of Appeals of West Virginia, Docket No. 11-0371, against Twist and various Twist Entities.

29.    Twist was criminally indicted for tax evasion in 2012.  Attached hereto as Exhibit 11 is the January 19, 2012 criminal indictment of Twist.

30.    Defendants have engaged in an intentional scheme to further and continue the Twist fraud for their own personal benefit.  Defendants should be held accountable for their wrongdoing.  In this action, the Plaintiff allege, *inter alia,* fraudulent conveyance, fraud, aiding

---

[1] Some of the Twist Entities include but are not limited to: Appalachian Energy Partners 2001-D, LLP, Appalachian Energy Partner 2001-S, LLP, Appalachian Energy Partners 2001 II, LLP, Appalachian Energy Partners 2003 S-II, LLP, Blue Light of Kentucky, LLC, Burning Springs Energy Partners 1999, LLP, Burning Springs Energy Partners 2000, LLP, Burning Springs Energy Partners 2001-S, LLP, Cherokee Drilling Company, LLC, Cherokee Energy Company, Haynes #2 Energy Partners 2001, LLP, Martin Twist Energy Company, LLC.

8

and abetting fraud and fraudulent conveyance, conversion and civil conspiracy against Defendants.  Defendants should not be entitled to continue profiting from Twist's fraud now that Twist is dead.  Defendants are liable to Grayiel for the value of the fraudulently transferred Natural Gas Assets, all revenues since the time of the fraudulent transfer, compensatory up to the amount of the Grayiel Judgments and applicable post-judgment interest, as well as punitive damages and attorneys' fees.

## THE NATURAL GAS ASSET TRANSFER SCHEME

31.     Beginning in the early 2000's when investors and government agencies began its investigations and litigation, Twist concocted a scheme to transfer nominal ownership of the Natural Gas Assets and various real estate assets to his half-brother Joerhea Beasley, a gentleman who is understood to have special needs/very low IQ.

32.     However, by approximately 2008, Twist realized that his creditors and investors would eventually obtain judgments against him and the Twist Companies.

33.     As result of this realization, Twist began to concoct a scheme that involved a conspiracy with Defendants to create fictitious encumbrances on the Natural Gas Assets and real estate assets through the perpetration of a fraud on the courts.

34.     As set forth in the Armstrong Affidavit, and as will be more fully discovered during the course of this litigation, Twist first recruited and attempted to entice Mr. Armstrong to sue him and put a lien on his assets for the purpose of shielding those assets from his investors and creditors.

35.     However, Twist then found AIO, Samir Anastas and Gregory Anastas to participate in this conspiracy.  To wit, according to Armstrong's recollection, it appears that

AIO, Samir Anastas and Gregory Anastas initially invested in some wells offered by Twist, just as Grayiel did.

36.     Twist, AIO, Samir Anastas and Gregory Anastas then conspired to participate in a fictitious credit facility agreement in the purported amount of $2,000,000.00 (the "**Credit Facility Agreement**"), pursuant to which no money was ever transferred.  To the extent that AIO provided any funds to Twist or the Twist Companies, they did so purely in the capacity as investors, not creditors.  A copy of the purported Credit Facility Agreement is attached hereto as Exhibit 12.

37.     Twist, Samir Anastas, Gregory Anastas and AIO then conspired to create the appearance of a proper assignment of the Natural Gas Assets via a wrongful use of the Kentucky court system.

38.     In particular, Twist convinced Samir Anastas, Gregory Anastas and AIO to file a "complaint" against him on September 23, 2008 in respect of the fabricated Credit Facility Agreement.     Attached hereto as Exhibit 13 is a copy of the complaint filed by the Defendants in the Commonwealth of Kentucky, Jefferson County Circuit Court.

39.     In stark contrast to Twist's defense strategy in respect of the claims made by Grayiel and the other investors, where years-long delay and obstruction tactics ultimately deemed fraudulent by the West Virginia Supreme Court were employed, Twist's "defense" strategy in relation to the purported AIO debt acquired under the sham Credit Facility Agreement was markedly different.

40.     On October 30, 3008, just over a month after the AIO complaint was filed, the Jefferson County Circuit Court granted AIO an "Agreed Judgment" against Twist, Martin Twist

10

Energy Company, LLC and Cherokee Energy Company, LLC, wherein AIO acquired possession, title, and control of the Natural Gas Assets. This was undoubtedly a legal "remedy" concocted to hide a fraudulent transfer to avoid and evade creditors of Twist – including George Grayiel. Attached hereto as Exhibit 14 is a copy of the Agreed Judgment.

41.     Gregory Anastas signed the Agreed Judgment as the Managing Member of Advantage Investments, LLC which is the Managing Member of AIO.

42.     The goal of the transfers under the Agreed Judgment are clear to Grayiel and Mr. Armstrong: this was a scheme concocted by Twist and the Defendants to systematically (and under the cover of judicial sanction) unlawfully encumber and then transfer the Natural Gas Assets as a means of keeping the defrauded investors, including Grayiel, from ever recovering in respect of the fraud Twist perpetrated.

43.     Since that time, each of the Defendants have conspired to continue this fraudulent scheme and each of the Defendants have directly profited from that scheme.

44.     Defendants, or some combination of them, reviewed the transfer documents on behalf of AIO.

45.     Defendants, or some combination of them, directly and substantially participated in and/or orchestrated the transfer of the Natural Gas Assets to AIO on behalf of the Twist Companies via the Agreed Judgment.

46.     Defendants knew or had reason to know, that Twist and the Twist Companies were and would be the subject of substantial litigation and investigation in respect of the fraud.

7093721v.1

47.     Defendants knew or had reason to know that, as a result of the transfers under the Agreed Judgment and subsequent actions taken in furtherance of the conspiracy and fraud, that Twist's investor victims, including Grayiel would be harmed.

48.     Defendants intended to harm Twist's investors, including Grayiel, by virtue of the conspiracy and scheme to encumber and transfer ownership of the Natural Gas Assets.

49.     In determining fraudulent intent, the following factors, among others, are considered:

    a.   whether the transfer or obligation was to an insider;

    b.   whether the transfer or obligation was disclosed or concealed;

    c.   whether, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    d.   whether the transfer was of substantially all of the debtor's assets;

    e.   whether the debtor removed or concealed assets;

    f.   whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or amount of obligations incurred; and

    g.   whether the debtor was insolvent or became insolvent shortly after the transfer was made.

50.     All of these badges of fraud are present here.  After the purported assignment, via the Agreed Judgment, substantially all of the Twist Energy Organization's assets and the Natural Gas Assets to insiders (all of which could be reasonably be considered friends of  Twist that

were originally introduced by Roger Minkoff), while Twist had been contemporaneously both threatened and engaged in substantial litigation, and an investment fraud, for fictitious consideration, thereby rendering the Twist Energy Organization insolvent, for the express purpose of impeding and obstructing prospective creditors, including Grayiel, all the while Twist continued to manage, control and operate the Natural Gas Assets and derive all or substantially all proceeds therefrom.

51.     Twist initially effectuated the continuance of management, control and operation of the Natural Gas Assets via the entities 530 West Main Street and Blue Light of Kentucky LLC via the Natural Gas Gathering Agreement.  At some point thereafter, Twist met and had a child with Sarinprapa Teema.

52.     As the civil and criminal litigation against Twist continued to mount, he then conspired with Sarinprapa Teema to further transfer the operation and revenue gathering rights of the Natural Gas Assets to a nearly identically named company, Blue Light of Kentucky Limited Liability Company, which would be nominally owned and managed by Teema.

53.     After Twist's incarceration and death, Sarinprapa Teema engaged in the following intentional acts.

54.     First, she engaged in significant and substantial purported "equity draws" in the name of Sarinprapa Teema and the deceased or incarcerated Martin Twist, further depleting and converting the assets that Twist's investors and creditors should have been entitled.  As such, Sarinprapa Teema committed conversion with respect to such pre-executrix "equity draws" and withdrawals, and breach of fiduciary duty with respect to post-executrix draws and withdrawals, and has been unjustly enriched thereby.

7093721v.1

55.     Second, she, Gregory Anastas, Samir Anastas and AIO furthered the Twist conspiracy centered on the Natural Gas Assets by agreeing that Sarinprpa Teema would manage, operate and collect revenues in relation to such Natural Gas Assets, and agreed to split the profits of this scheme.

56.     Accordingly, Twist, Sarinprapa Teema, Gregory Anastas, Samir Anastas and AIO have intentionally continued the Twist fraud, aided and abetted fraudulent transfers for personal benefit, and engaged in a civil conspiracy to accomplish the same.

57.     The actions undertaken by Twist and the Twist Companies in fraudulently transferring the possession, title and control of certain drilling leases, personal property and other assets to AIO were intentional, reckless and/or done with malice.  Through Gregory and Samir Anastas, AIO intentionally obtained possession, title and control of the Natural Gas Assets for the express purpose of putting such assets beyond the reach of Twist's victims – including but not limited to Grayiel.  They then furthered this conspiracy and fraud for their personal benefit after Twist's incarceration and death.

58.     In so doing, they acted intentionally, recklessly and/or with malice.  Under these circumstances, the Plaintiff is entitled to an award of compensatory and punitive damages against the Defendants, who are jointly and severally liable for all such damages.

WHEREFORE,  Mr. Grayiel request that the Court: (1) enter a judgment in favor of Plaintiff against AIO Holdings, LLC, Gregory Anastas (both in his individual capacity and as the Managing Member of Advantage Holdings LLC which is the Managing Member of AIO Holdings, LLC), Samir Anastas, and Sarinprapa Teema (both in her individual capacity and as the former executrix of the Martin Twist Estate, Blue Light of Kentucky, LLC and John Doe entities and persons); (2) enter a Declaratory Judgment that the transfer of possession, title and

14

7093721v.1

control of the Natural Gas Assets to AIO is void under K.R.S. § 378.020; (3) enter a Declaratory Judgment transferring the Natural Gas Assets (and any liquidated proceeds thereof) to Plaintiff; (4) award Plaintiff compensatory damages together with punitive damages against each of the Defendants, and impose joint and several liability against Defendants with respect to all such damages; (5) provide a trial by jury 6) award Plaintiff all of the costs they incur in the litigation of this action; (7) award Plaintiff prejudgment and post-judgment interest; (8) award Plaintiff's reasonable attorneys' fees against Defendants; and (9) grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: November 6, 2015

_/s/ James M. Burd_____
James M. Burd
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
100 Mallard Creek Road, Suite 250
Louisville, Kentucky 40207
Telephone: 502.238.8500
Facsimile: 502.238.7995
James.burd@wilsonelser.com

Warren E. Gluck
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212.513.3200
Facsimile: 212.385.9010
warren.gluck@hklaw.com
(pro hac vice application pending).

7093721v.1